**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ANGELINA FOSBINDER<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES TENNIS ASSOCIATION, INC., USTA PLAYER DEVELOPMENT, INC., and TAYLOR WINGATE,<br><br>Defendants. | No. 6:26-cv-01133-AGM-LHP |

**DEFENDANTS UNITED STATES TENNIS ASSOCIATION INCORPORATED, AND USTA PLAYER DEVELOPMENT INCORPORATED'S UNOPPOSED MOTION TO TRANSFER, OR IN THE ALTERNATIVE, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Jeffrey I. Carton, Esq.
Leigh Smith, Esq.
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
(914) 331-0100
jcarton@denleacarton.com
lsmith@denleacarton.com

*Attorneys for Defendants United States Tennis Association, Incorporated, and USTA Player Development, Incorporated*

TABLE OF CONTENTS

MEMORANDUM OF LAW.....…………………………………………………...1

BACKGROUND…………………………………………………………………...4

A. The Parties…………………………………………………………………4

B. The Agreement……………………………………………………………..6

ARGUMENT……………………………………………………………………….8

I. THE COURT SHOULD TRANSFER THE CLAIMS AGAINST THE USTA DEFENDANTS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK……………8

A. Legal Standard……………………………………………………...7

B. The Court Should Enforce the Forum Selection Clause.……………11

1. The Forum Selection Clause Is Valid and Enforceable………11

2. No Extraordinary Circumstances Invalidate the Agreement's Forum-Selection Clause………………………..17

i. There Was No Fraud or Overreach……………………18

ii. A Transfer Will Not Deprive Plaintiff of her Day in Court……………………………………………...20

iii. Applying New York Law in a New York Forum Would Not Deprive Plaintiff of a Remedy…………..…21

iv. Enforcing the Forum Selection Clause Is Consistent with Public Policy…………………………..…22

C. The Court Should Disregard the Notice of Purportedly Related Cases……………………………………………………….…23

II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE ACTION PURSUANT TO FED. R. CIV. P. 12(b)(3)……………….…24

CONCLUSION……………………………………………………………...……24

Defendants United States Tennis Association Incorporated ("USTA"), and USTA Player Development Incorporated ("USTAPD," and together with the USTA, the "USTA Defendants"), by and through undersigned counsel, and pursuant to 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 12(b)(3), move to transfer, or in the alternative to dismiss, Plaintiff's Complaint for improper venue and in support therefore maintain as follows:

1. The Court should transfer this case to the Southern District New York pursuant to 28 U.S.C. § 1404(a) because the USTA Defendants are domiciled and have their principal places of business there, and Plaintiff has no significant connection to Florida.

2. In the alternative, the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3) because venue is improper in this Court as a result of a contract between Plaintiff and the USTA Defendants, and the filing in this Court is an example of forum shopping.

WHEREFORE, the USTA Defendants pray for an order transferring this action to the Southern District of New York or, in the alternative, dismissing the Complaint.

## MEMORANDUM OF LAW

This action is an impermissible attempt at forum shopping. Plaintiff – a citizen of North Carolina -- has sued the USTA Defendants -- both of whom are

domiciled in New York -- for the alleged improper conduct of her former coach, Taylor Wingate, who is also not a citizen of Florida but, rather, of Maryland. Worse yet, none of the conduct at issue is alleged to have occurred in Florida, and the tenuous basis on which Plaintiff seeks to join the USTA Defendants in her lawsuit – her participation in the USTA Player Development Program – required her to consent to an exclusive forum selection clause in Westchester County, New York, a venue clause which has been upheld previously by Florida courts under nearly identical circumstances.

Plaintiff's forum shopping should be swiftly rejected. The enrollment documents for the USTAPD's Player and Coach Development program (the "Program") governing her relationship with the USTA Defendants contained a valid, mandatory, exclusive forum selection clause requiring that all disputes between the Plaintiff and the USTA Defendants be resolved in a court located in Westchester County, New York. Plaintiff is obviously familiar with the terms of the agreement she entered into with the USTA Defendants (the "Agreement") because she signed two separate enrollment documents, each of which included the forum-selection clause, and her Complaint tracks the language—nearly verbatim—of the very paragraph in one of those documents that contains the exclusive New York forum-selection clause. (Compl. ¶ 11.) Simply put, Plaintiff cannot turn a blind eye to the exclusive venue clause which is memorialized in the very same

documents with which she attempts to impute liability to the USTA for the alleged actions of her former coach.

The law is clear. The Supreme Court established decades ago that forum selection clauses are presumptively valid and should be enforced except in rare cases involving extraordinary circumstances. There are no such circumstances here. The Southern District of New York is an appropriate venue for this Action because, in addition to the forum-selection clause, Defendants are domiciled in New York, and this Action could have been properly brought there. Maintaining this Action before this Court would place an unnecessary burden on the USTA Defendants, while litigating in New York would not be any less convenient for Plaintiff, who, at this point, appears to have no more of a connection to Florida than she does to New York. Requiring Plaintiff to comply with the terms of the Agreement she freely entered into would not be unreasonably burdensome, nor would it deprive her of her day in court. Indeed, these very issues were previously litigated between another participant in the USTA Player Development Program and the USTA Defendants and resulted in the dismissal of the case filed in Florida. *See, infra,* pp. 13-16.

Accordingly, the USTA Defendants respectfully request that this Court grant their unopposed Motion and transfer this action to the Southern District of New York – the forum designated in the parties' Agreement—or, in the alternative,

dismiss the action pursuant to Fed. R. Civ. P. 12(b)(3).

## BACKGROUND

### A. <u>The Parties</u>

The USTA Defendants are corporations organized and existing under the laws of the State of New York, with their principal places of business located in Purchase, New York.[1] The USTA is the national governing body of the sport of tennis and is the recognized leader in promoting and developing the sport's growth on every level in the United States.

The USTAPD is affiliated with the USTA, as the USTA is the Sole Member of USTAPD. USTAPD's mission is to identify, train, and support talented tennis players across the country. USTAPD offers players structured training, coaching, and support systems. USTAPD also offers financial assistance for talented athletes. USTAPD invites a limited number of top-performing elite athletes to participate in its player development programs. The participants in these programs are among the most promising tennis players in the country and are chosen for their excellent work ethic, commitment, and attitude.

Plaintiff Fosbinder ("Plaintiff" or "Fosbinder") is a wheelchair tennis athlete who is a citizen of North Carolina. (Compl. ¶¶ 1, 34.)[2] Fosbinder is a former member of the USTA who began playing tennis as a child and who, by the age of

---

[1] The USTA Defendants also have offices in Florida.
[2] The facts stated herein are drawn from the Complaint and should not be considered admissions.

16, was competing competitively in wheelchair tennis. (Compl. ¶ 33.) According to the Complaint, Fosbinder began receiving coaching advice from unrelated defendant Taylor Wingate ("Wingate") when she was 16 years old, apparently in South Carolina. (Compl. ¶¶ 47, 51.)

The Complaint alleges that Wingate is a resident of Maryland; it does not allege that he has any connection to the State of Florida. (Compl. ¶ 4.) On July 15, 2026, Wingate filed a Motion Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, arguing:

> Wingate has never lived, worked, owned property, or otherwise conducted any business in the State of Florida. Plaintiff is an individual who at all times relevant to this litigation has been a resident of the State of North Carolina. Wingate was only physically present with Plaintiff in the states of North Carolina, South Carolina, and Georgia. Wingate never interacted with Plaintiff, in a personal, tennis-related, or any other matter, in the State of Florida.
>
> Wingate has never been employed by Defendant [USTA]. Wingate had no discretionary authority regarding the USTA's Player Development program. Wingate's pursuits as wheelchair tennis athlete and instructor were never directed toward the State of Florida.

(ECF No. 32, at 2-3 (citing ECF No. 32-1 (Decl. of Taylor Wingate) ¶¶ 5-16).)

In early February 2022, Fosbinder was informed, via a letter with multiple attachments (the "Invitation Letter"[3]), that she had been selected to participate in a

[3] Declaration of Leigh Smith (Decl.) Ex. A. The court may consider facts outside the complaint in determining whether venue is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).

prestigious USTAPD developmental tennis camp in Orlando, Florida. Plaintiff accepted USTAPD's offer and, on March 23, 2022, she electronically signed the two-page Invitation Letter and a one-page Waiver & Release, along with other required documents. (Exs. A, B.[4]) Plaintiff subsequently attended and participated in the Program in April 2022. (Compl. ¶ 41.)

**B. <u>The Agreement</u>**

The two-page Invitation Letter Plaintiff signed set forth the terms of her participation in the Program. On the first page (in the paragraph referenced in the Complaint), the Invitation Letter states (and Plaintiff agreed) that she "consent[ed] to the ***exclusive jurisdiction of the courts in the State of New York, County of Westchester*** for any dispute or action arising from or out of this agreement." (Decl. Ex. A (emphasis added).) The forum-selection clause is in the same font as the rest of the letter. (Decl. Ex. A.) The Invitation Letter also informed Plaintiff that, to participate in the Program, she was required to sign not only the Invitation Letter

---

[4] The Invitation Letter and Waiver & Release constitute a single agreement under traditional principles of contract interpretation. *See Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993) ("Generally, separate writings are construed as one agreement if they relate to the same subject matter and are executed simultaneously.") (citing *Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 233 (2d Cir. 1991) ("Instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together.") (citing *Nau v. Vulcan Rail & Constr. Co.*, 36 N.E.2d 106, 110 (1941); *Rudman v. Cowles Communications, Inc.*, 280 N.E.2d 867 (1970))). *See also Clayton v. Howard Johnson Franchise Systems, Inc., 954 F.2d 645, 648 (11th Cir.* 1992) ("Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract.").

itself but also the additional documents attached thereto, including the Waiver & Release form (Decl. Ex. B).

The one-page Waiver & Release form stated, in a separate paragraph that is the same font as the rest of the document, that it would be "governed by and enforceable in accordance with the laws of the State of New York without giving effect to the principles of the conflicts of law for that State and [that] ***the parties submit to the exclusive jurisdiction of the New York Courts***, County of Westchester."[5] (Decl. Ex. B (emphasis added).) The paragraph containing the forum selection clause is immediately above the section labeled "**AGREED TO AND ACCEPTED**." (*Id.*) The Waiver & Release also states in capital letters that Plaintiff is releasing the USTA Defendants (among others) "FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, DAMAGES, CAUSES OF ACTION, PRESENT OR FUTURE, WHETHER KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, RESULTING FROM OR ARISING OUT OF PARTICIPANT'S PARTICIPATION IN THE PROGRAM . . . ." (*Id.*)

Plaintiff "docusigned" the Invitation Letter, the Waiver & Release, and the other required forms on March 23, 2022, after she had over a month to review the documents and consider their terms, including the forum selection clause.

[5] S.D.N.Y. (White Plains) is in Westchester County, where the USTA Defendants are domiciled.

## ARGUMENT

### I. THE COURT SHOULD TRANSFER THE CLAIMS AGAINST THE USTA DEFENDANTS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

#### A. Legal Standard

Over 50 years ago, the Supreme Court in *The Bremen v. Zapata Off-Shore Co.* held that contractual forum selection clauses are presumptively valid and should be enforced except in rare cases involving extraordinary circumstances where enforcement would be unreasonable. 407 U.S. 1, 10-11 (1972). The Supreme Court recognized that forum selection clauses serve the important function of eliminating uncertainty regarding where disputes will be resolved, thereby allowing parties to enter into contractual relationships with the foreknowledge of the applicable forum for any disputes that might arise. *Id.* at 13, n.15. After the Supreme Court's decision in *Bremen*, 28 U.S.C. § 1404(a) ("Change of venue") was amended and now reflects the Court's holding, stating explicitly that "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division ***to which all parties have consented***."[6] 28 U.S.C. § 1404(a) (emphasis added).

Since deciding *Bremen*, the Supreme Court has reiterated on multiple occasions that, where they exist, contractual forum selection clauses are controlling

[6] This action could have been filed in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b)(1), as the USTA Defendants are domiciled within that district.

and should be enforced in almost all cases. *See, e.g., Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 (2013) (A forum selection clause "represents the parties' agreement as to the most proper forum" and should be "given ***controlling weight*** in all but the most exceptional cases.") (emphasis added). The Supreme Court has cautioned that "courts should not unnecessarily disrupt the parties' settled expectations" by failing to honor forum selection clauses:

> A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in the agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Id.*

Before enforcing a forum selection clause, however, the Court must first determine whether the clause is valid. The 11th Circuit has recently clarified that, in making this determination, the Court must look to the state law that governs the contract containing the forum selection clause to determine both whether it is valid and also whether it applies to the parties' dispute. *See Declan Flight, Inc. v. Textron eAviation, Inc.*, No. 24-10913, 2026 U.S. App. LEXIS 14928, *28 (11th Cir. May 26, 2026) ("[F]orum-selection clauses must be interpreted like any other contractual provision: under the substantive law that governs the contract.").

Once a defendant demonstrates that there is a valid forum selection clause, the burden shifts to the plaintiff to establish that there are extraordinary

circumstances that justify ignoring that valid contract provision. This analysis differs from a traditional *forum non conveniens* inquiry. The Eleventh Circuit has explained that, when a contract contains a valid forum selection clause, "the usual importance attached to the plaintiff's choice of forum evaporates; instead, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *AQuate II LLC v. Myers*, 100 F.4th 1316, 1322-23 (11th Cir. 2024) (citing *Atl. Marine*, 571 U.S. at 63-64) (internal citations and quotation marks omitted).[7] *See also Slater* v. *Energy Services Group. Intern, Inc.,* 634 F.3d 1326, 1331 (11th Cir. 2011) ("Mandatory forum-selection clauses are 'presumptively valid and enforceable' absent a 'strong showing that enforcement would be unfair or unreasonable under the circumstances.'") (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)); *Aboosamara v. Cisolift Distrib. USA, Inc.*, No. 2:25-cv-1100-JES-NPM, 2026 U.S. Dist. LEXIS 74323, at *5-6 (M.D. Fla. April 6, 2026) (same). *See also Ultimate Fitness Grp., LLC v. Felix*, No. 18-cv-60981, 2018 U.S. Dist. LEXIS 210400 at *21-22 (S.D. Fla. Dec. 12, 2018) ("A forum-selection clause can only be invalidated on a showing of a 'bad

[7] A contractual forum-selection clause changes a court's normal venue analysis in three significant ways: (1) the Plaintiffs choice of forum "merits no weight;" (2) the court "should not consider arguments about the parties' private interests"; and (3) when a party bound by a forum-selection clause . . . "flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ." *Atl. Marine*, 571 U.S. at 63-64.

faith motive' where the forum was chosen 'as a means of discouraging [parties] from pursuing legitimate claims.'") (quoting *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011)).

Thus, as the Eleventh Circuit has explained, after the court determines that a forum-selection clause is valid, the court must engage in a modified analysis that considers four factors in determining whether a forum-selection clause should be disregarded as unfair or unreasonable: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of [her] day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *AQuate II*, 100 F.4th at 1323 (quoting *Krenkel*, 579 F.3d at 1281). The Eleventh Circuit further explained: "These factors will rarely invalidate a forum-selection clause, which is, after all, a contract between two parties. But if a party can show that 'trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' the forum-selection clause will not be enforceable." *Id.* (quoting *Bremen*, 407 U.S. at 18). *See also Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021).

**B. The Court Should Enforce the Forum Selection Clauses**

1. <u>The Forum Selection Clause Is Valid and Enforceable</u>

Before enforcing the Agreement's forum-selection clause, the Court must

determine whether it is valid and whether the allegations in the Complaint fall within its scope. *See Ultimate Fitness*, 2018 U.S. Dist. LEXIS 210400 at *22 ("Beyond validity, in analyzing the application of a forum selection clause, a court must determine whether the claim or relationship at issue falls within the scope of the clause—by looking to the language of the clause itself—and whether the clause is mandatory or permissive.") (citing *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause.")) (remaining citation omitted). The answer to both questions is yes.

The Waiver & Release signed by Fosbinder contains not only a choice of forum clause but also a choice of law clause that requires the application of New York law in the event of a dispute. (*See* Decl. Ex. B.) Thus, New York law applies to the analysis of whether the forum selection clause is valid and whether it applies to the allegations in this case. *Declan Flight, Inc. v. Textron eAviation, Inc.*, 2026 U.S. App. LEXIS 14928, at *28 ("[F]orum-selection clauses must be interpreted like any other contractual provision: under the substantive law that governs the contract."). Under New York law, as under Florida law, "[a] contractual forum selection clause is prima facie valid and enforceable unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum

would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court." *Puleo v Shore View Ctr. for Rehabilitation & Health Care*, 17 N.Y.S.3d 501, 502 (N.Y. App. Div. 2015) (citations and internal quotation marks omitted).[8]

Determining the validity and applicability of the forum selection clause in this action is straightforward. Two Florida courts—a circuit court and an appellate court—both considered a substantially similar clause and determined that it should be enforced in an action involving largely analogous allegations. In *O'Loughlin v. U.S. Tennis Ass'n, Inc.*, the plaintiff was the parent of a minor ("J.O.") who was enrolled in the USTAPD National Training Program. No. 2012 CA 011333 MB, 2012 Fla. Cir. LEXIS 14922, at *1 (Fla. Cir. Ct. Nov. 2, 2012), *aff'd*, 128 S.3d 894 (Fla. Dist. Ct. App. 2013). The plaintiff alleged that, as a result of her coach's actions, J.O. "sustain[ed] an eating disorder while at the USTAPD National Training Program." *Id.* at *2. Like Fosbinder, the plaintiff in *O'Loughlin* sued the USTA and USTAPD in addition to J.O.'s coach. At the time of J.O.'s enrollment in the USTAPD program, both she and the plaintiff were citizens of Florida.

---

[8] Should the Court determine that Florida law applies, the outcome would be the same: the forum selection clause would be valid and enforceable. *See, e.g., Total Quality Logistics, LLC v. Trade Link Capital, Inc.*, 358 So. 3d 458, 461 ("'Because Florida law presumes that forum selection clauses are valid and enforceable, the party seeking to avoid enforcement of such a clause must establish that enforcement would be unjust or unreasonable.'") (citation omitted). "Courts need not resolve choice-of-law issues when the laws of different states would produce the same result." *Edison v. Barnett Outdoors, LLC*, No. 8:25-cv-03110-JLB-TGW, 2026 U.S. Dist. LEXIS 140651, at *11 (citations omitted).

The *O'Loughlin* plaintiff and J.O. co-signed multiple "Consent and Waiver" forms containing language that is nearly identical to the language in the Waiver & Release Fosbinder "agreed to and accepted." *Id.* at *1-2; Decl. Ex. B. The Consent and Waiver forms signed by the plaintiff and J.O. that were at issue in *O'Loughlin* "each contained a forum selection clause, which state[d], 'Student, Parent/Guardian and USTAPD irrevocably submit to the exclusive jurisdiction of the federal or state courts in Westchester County, New York in the event of any dispute or claim of action.'" *O'Loughlin,* at *1-2. The language in Fosbinder's Invitation Letter similarly provides that New York is the exclusive jurisdiction "for any dispute or action arising from or out of this agreement" (Decl. Ex. A.), and the Waiver & Release covers "any and all claims." (Decl. Ex. B.) The *O'Loughlin* court found the language in the Consent and Waiver forms to be sufficiently broad to encompass the plaintiff's negligence, breach of fiduciary duties, and outrageous misconduct and infliction of emotional distress claims. *O'Loughlin*. 2012 Fla. Cir. LEXIS 14922, at *4 ("Based on the breadth of the language of the clause, forum selection clauses have been held to be enforceable and binding in tort actions."). The Court here should, as well. *See Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1296-97 (11th Cir. 2021) (holding broad forum selection clause that applied to "any issues or disputes arising out of or relating in connection to" the parties' agreement was enforceable); *Florea v. Hash Map Labs, Inc.*, No. 8:25-cv-

628-TPB-TGW, 2026 U.S. Dist. LEXIS 21652, at *5-6 (M.D. Fla. Feb. 3, 2026) (enforcing broad forum selection clause and transferring the case).

Based on the Consent & Waiver's broad forum selection clause, the USTA Defendants moved to dismiss the complaint in *O'Loughlin* for improper venue. The *O'Loughlin* court granted the motion to dismiss, and its reasoning is persuasive here. In considering whether to enforce the forum selection clause, the court recognized that, like Fosbinder, the plaintiff and J.O. had signed the agreements containing the forum selection clauses "in consideration of J.O.'s acceptance into [the USTAPD] program." *Id.* at *1-2. The court further noted that, like Fosbinder, "J.O. accepted the benefits of the program . . . ." *O'Loughlin*. 2012 Fla. Cir. LEXIS 14922, at *9-10. As a result, the court concluded that, because J.O. had accepted the benefits of the USTAPD Program, it would be improper to allow her to "now void the contract in an attempt to make the forum selection clause unenforceable." *Id.* The Florida Court of Appeals for the Fourth District affirmed the decision *per curiam* without discussion. *O'Loughlin v. United States Tennis Ass'n*, 128 S.3d 894, at *1 (Fla. Dist. Ct. App. 2013).

The argument in favor of transferring this case to the Southern District of New York is even stronger than the argument in favor of dismissal in *O'Loughlin*. Like J.O., Fosbinder accepted the benefits of the Program and should not be allowed to void a clause in the Agreement she no longer finds favorable. Unlike

J.O., however, Fosbinder is a citizen of South Carolina, not Florida, and she has alleged no contact with Florida beyond attendance at a three-day event in April 2022. In addition, J.O. was a minor who had no connection to New York and who participated over the course of multiple years at a facility that was close to her home. Fosbinder, on the other hand, was an adult when she made the decision to travel to another state to participate in the three-day Program.

As *O'Loughlin* demonstrates, the presumption in favor of forum selection clauses is sufficiently strong that courts routinely enforce them, even when the plaintiff is a Florida citizen (which Fosbinder is not). In *Slater* v. *Energy Services Group. Intern, Inc.*, for example, the plaintiff, who lived and worked in Florida, signed an employment agreement that included an exclusive forum selection clause specifying that complaints must be filed within the City of Richmond, Virginia. 634 F.3d 1326 (11th Cir. 2011). Based on that clause, the defendant moved to dismiss the case or, alternatively, to transfer it. *Id.* at 1329. The court granted the motion, and the Eleventh Circuit affirmed, explaining that the Virginia forum-selection clause should be enforced because "mandatory forum-selection clauses are 'presumptively valid and enforceable' . . . ." 634 F.3d 1326, 1331 (11th Cir. 2011).

Fosbinder's decision to file her lawsuit in this District "flout[s her] contractual obligation [to] file suit in a different forum," in blatant disregard of the

Supreme Court's mandate in *Atlantic Marine*. 134 S. Ct. at 582. Moreover, the decision reeks of forum-shopping, apparently in the hope of achieving a more favorable result than she would in New York–the venue in which she agreed to litigate. Plaintiff's effort must be rejected. *See Florea*, 2026 U.S. Dist. LEXIS 21652, at *5-6 ("In view of this seemingly obvious contractual venue requirement, it is unclear why they attempted to file this case in the Middle District of Florida in the first place.") (citations omitted).

For the reasons set forth above, the Court should find that the forum selection clause in the Agreement is valid and enforceable.

2. <u>No Extraordinary Circumstances Invalidate the Agreement's Forum-Selection Clause</u>

As set forth above in Section I.A., courts should only refuse to enforce forum-selection clauses when "(1) [the forum-selection clause]'s formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of [her] day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *AQuate II*, 100 F.4th at 1323 (quoting *Krenkel*, 579 F.3d at 1281). The Complaint contains no allegations that would establish that the Agreement's forum selection clause is invalid under any of these four factors, and the documents signed by Plaintiff conclusively establish that none of them apply.

i. *There Was No Fraud or Overreach*

Plaintiff's acceptance of the forum-selection clause in the Agreement was not induced by fraud. Prior to attending the USTAPD Program, Plaintiff received the Invitation Letter and the Waiver & Release, both of which contained the Agreement's forum selection clause. In both documents, the forum-selection clause appeared on the first (or only) page of the document in the same size font as the surrounding paragraphs—a fact that supports the fairness of the clauses and undermines any possible claim of fraud. The Eleventh Circuit considered these characteristics in *Krenkel v. Kerzner Int'l Hotels Ltd.*, stating:

> In determining whether there was fraud or overreaching in a non-negotiated forum-selection clause, we look to whether the clause was reasonably communicated to the consumer. A useful two-part test of "reasonable communicativeness" takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms.

579 F.3d 1279, 1281 (11th Cir. 2009). In *Krenkel*, the court determined that the forum selection clause at issue was valid and enforceable where, as with the Agreement's forum selection clause, it "was not hidden or ambiguous," "it was on a one-page form entitled Acknowledgment, Agreement and Release' that contained only eight paragraphs," it "was set apart in a separate paragraph, was in legible type in the same font and type size as the surrounding paragraphs." *Id.* at 1280. Based on the findings, the Eleventh Circuit held that "[t]he forum selection clause

was reasonably communicated to the Krenkels, so we conclude it was not signed as a result of fraud or overreaching." *Id.* at 1281.

In this case, as described above, *supra* (Background § B), Plaintiff accepted the terms of the Invitation Letter after taking several weeks to consider its terms. Significantly, as is evident from the face of the documents Plaintiff signed, the USTA Defendants made no attempt to hide the clause. In fact, the forum selection clause is on the first page of the Invitation Letter and on the only page of the Waiver & Release. (Exs. A, B.) Plaintiff was not rushed or pressured into the Agreement. Indeed, Plaintiff was not compelled to sign the Invitation Letter or Waiver and Release or accept the invitation to the Program at all.

The fact that the date on which the documents were signed was more than a month after the date on the Invitation Letter strongly suggests that Plaintiff had sufficient time to review and consider the two-page Invitation Letter and the one-page Waiver and Release. Under Eleventh Circuit law, "[u]nless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding." *Feggestad v. Kerzner Int'l Bah., Ltd.*, 843 F.3d 915, 919 (11th Cir. 2016) (quoting *Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 347-48 (Fla. 1977)).

Further, the forum selection clause does not overreach. *O'Loughlin* is again

instructive. In *O'Loughlin*, the plaintiff argued that "enforcing the forum selection clause would result in transferring a local dispute into a foreign forum . . . . *O'Loughlin*, at *10. The court explicitly rejected the argument that the case involved a "local dispute," noting that the "action has a nexus to New York because both the USTA and USTAPD are New York corporations, which is why New York is the chosen jurisdiction for the defendants." *Id.* at *10-11. The holding in *O'Loughlin* is especially persuasive here because the court in that action dismissed the complaint despite the fact that the allegedly injured individual was a minor who was actually a Florida citizen and who alleged harm that occurred in Florida. Here, on the other hand, Plaintiff is an adult who has alleged no (and appears to have no) ongoing or continuing connection to Florida.

ii. *A Transfer Will Not Deprive Plaintiff of her Day in Court*

It is significant—if not dispositive—that Plaintiff will not be denied her day in court if the case is transferred to New York. As an initial matter, it is not evident that such a transfer would result in ***any*** inconvenience to Plaintiff, let alone some inconvenience sufficient to outweigh the fact that Plaintiff and the USTA Defendants agreed to litigate their disputes in New York. As the *AQuate II* court made clear, unless "a party can show that 'trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,'" a forum-selection clause should be enforced. 100

F.4th at 1323 (citations omitted). *See also Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1297 (11th Cir. 2021) (same). Plaintiff cannot make this showing here. The Southern District of New York is in no way remote or "gravely difficult and inconvenient" to reach.

iii. *Applying New York Law in a New York Forum Would Not Deprive Plaintiff of a Remedy*

The Agreement and any claims or disputes arising under it are governed by New York law. (Decl. Ex. B.) Regardless of where the action is litigated, the Court will apply the same law. Thus, a transfer to the Southern District of New York could not conceivably deprive Plaintiff of any remedy if she were entitled to one. The Southern District is undoubtedly familiar with New York law. Moreover, Plaintiff already agreed to litigate in New York, effectively conceding that it is an adequate forum.

In a recent case in this district, the plaintiff argued transferring the case from Florida to New York would deprive it of its day in court. *Church of God Fla. State Offs., Inc. v. Mt. Hawley Ins. Co.*, 2026 U.S. Dist. LEXIS 122152, at *5 (M.D. Fla. June 3, 2026). The court then held that the plaintiff "fail[ed] to allege sufficient facts that enforcing the clause . . . would be unfair or unreasonable." *Id.* at 9. The court expressly rejected the argument that transferring the case to New York would be so unreasonable that the forum selection clause should be ignored. *Id.* at *17 ("Transferring the case to New York would not deprive [plaintiff] of its day in

Court.”). The Court here should reach the same conclusion: transferring the case from Florida to New York would not deprive Fosbinder of her day in court.

iv. *Public Policy Favors Enforcing the Forum Selection Clause*

Finally, no Florida public policy will be offended if this case is transferred. Rather, public policy strongly favors transferring the case to the proper forum pursuant to a valid contract.

Although courts can refuse to enforce forum selection clauses for public policy reasons, they regularly reject such arguments when they are raised by plaintiffs who are merely seeking to evade the forum selection clauses to which they previously agreed. In *Church of God*, the plaintiff argued that transferring the case offended public policy. *Id.* at *5. The court rejected this argument because the plaintiff had identified no public policy in Florida preventing the enforcement of valid forum selection clauses under the facts of the case.[9] *Id.* at *10. Indeed, absent a specific compelling public policy requiring adjudication in Florida, a New York forum selection clause should be enforced according to its terms. *Woods v. Christensen Shipyards, Ltd.*, No. 04-61432-CIV-ZLOCH, 2005 U.S. Dist. LEXIS

[9] Notably, the *Church of God* court rejected the argument that the forum selection clause should be invalidated because the policy was a contract of adhesion. *Id.* at *15. *See also Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991) (Supreme Court reaffirmed that forum selection clauses in form contracts are enforceable, provided the clause is not unreasonable; individual negotiation is not necessary for a clause to be enforceable because the clause could serve a legitimate purpose); *Krenkel*, 579 F.3d at 1281 (determining that the forum selection clause in form contract was enforceable because it “was reasonably communicated to the plaintiffs”).

42994 (S.D. Fla. Sep. 23, 2005).

This district court's decision in *Yakich v. Verathon, Inc.*, No: 8:16-cv-2246-T-17 JSS, 2017 U.S. Dist. LEXIS 118929 (M.D. Fla. March 9, 2017), is also on point. In *Yakich*, the court granted defendant's motion to transfer an action brought by a Florida plaintiff because the controlling agreement provided that Washington State was the exclusive venue. The court noted that, "when there is a valid forum selection clause, the Court gives no weight to the plaintiff's choice of forum." *Id.* at *7 (citing *Atl. Marine*, 134 S. Ct. at 582). The court then observed that:

> The relevant public interest factors militate strongly in favor of transferring this case. As the Defendant presciently points out, the Middle District of Florida is one of the busiest courts in the country. Likewise, the Court agrees that there are equal ties to Washington based on Verathon's presence in the state. Finally, the . . . Agreement calls for the application of Washington law. Washington courts are more likely to be familiar with the nuances of that law than this Court.

*Id.* at *9-10 (internal citation omitted).[10] The public policy considerations in this case likewise favor transferring the case.

### C. The Court Should Disregard the Notice of Purportedly Related Cases

On May 22, 2026, Plaintiff Fosbinder filed a notice of purportedly related actions. While Local Rule 107(c), Duty of the Lead Counsel, provides that lead counsel has a continuing duty to file promptly a "Notice of Related Action" identifying and describing any related action—either pending or closed—in the

[10] Your Honor's Standing Order Requiring Disclosure of the Use of Artificial Intelligence also notes that "[t]he Middle District of Florida is one of the busiest United States District Courts in the nation."

Middle District or elsewhere, Plaintiff here has filed a purported notice that identifies two actions involving different parties and different allegations. In other words, the two actions are clearly not related to this one. While counsel understands that objections to such notices are generally discouraged, it is apparent that this action is a cynical legal maneuver intended to create the illusion that venue in this Court is proper and/or to have the case transferred to Judge Byron, who is the judge assigned to one of the cases. This blatant attempt to forum and/or judge shop should be rejected.

## II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE ACTION PURSUANT TO FED. R. CIV. P. 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) provides that a defense based on improper venue may be raised by motion or in a responsive pleading. Should the Court determine that there is no basis to transfer this action to the Southern District of New York, the USTA Defendants request that the Court dismiss this action pursuant to Rule 12(b)(3) as its filing in this Court represents a blatant, impermissible, and wasteful effort to forum shop.

## CONCLUSION

For the reasons set forth above, the USTA Defendants respectfully request that this Court grant this unopposed motion and transfer this case to the Southern District of New York or in the alternative dismiss the action pursuant to Rule 12(b)(3).

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Middle District of Florida Local Rule 3.01(g), counsel for Defendants United States Tennis Association Incorporated and USTA Player Development Incorporated conferred with Plaintiff's counsel, Amy Judkins, by videoconference on July 23, 2026, and the parties agreed to the transfer of this action to the Southern District of New York.

**CERTIFICATION UNDER PENALTY OF PERJURY THAT ARTIFICIAL INTELLIGENCE WAS USED IN THE PREPARATION OF THIS FILING**

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Limited artificial intelligence was used in the preparation of this filing in the following way: *Lexis Protege was used to identify the leading cases for motions to transfer in the Middle District of Florida.* However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure, and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing, I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

Dated: July 24, 2026
White Plains, New York

Respectfully submitted,

**DENLEA & CARTON LLP**

By: */s/ Leigh Smith*

Jeffrey I. Carton
Leigh Smith
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jcarton@denleacarton.com
lsmith@ denleacarton.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 24, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

*/s/ Leigh Smith*
Leigh Smith (*pro hac vice*)
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
Telephone: (914) 331-0100
lsmith@denleacarton.com